UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

COLIN A. SMITH,

                              Plaintiff,

        v.                                          **DECISION AND ORDER**
                                                    13-CV-238S

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.


        1.      Colin Smith challenges the determination of an Administrative Law Judge
(ALJ) that he is not disabled within the meaning of the Social Security Act (the Act).

        2.      Smith, alleging a disability onset date of September 5, 2008, filed an
application for supplemental security benefits. The Commissioner of Social Security
(Commissioner) denied his application, and as result, he requested an administrative
hearing. He received that hearing before ALJ Mark Sochaczewsky on May 17, 2011. The
ALJ considered the case *de novo*, and on June 3, 2011, he issued a decision denying
Smith's application for benefits. Smith filed a request for review with the Appeals Council,
but the Council denied that request, prompting him to file the current civil action on March
4, 2013, challenging Defendant's final decision.[1]

        3.      On September 12, 2013, the Commissioner filed a motion for judgment on
the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. Smith followed suit
on October 28, 2013. Briefing concluded on November 27, 2013, at which time this Court
took the motions under consideration. For the following reasons, the Commissioner's

---

[1]The ALJ's June 3, 2011 decision became the Commissioner's final decision in this case when
the Appeals Council denied Plaintiff's request for review.

motion is granted and Smith's is denied.

4.     A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla"; it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5.     "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984). This Court must, however,

2

"independently determine if the Commissioner's decision applied the correct legal standards in determining that the plaintiff was not disabled." Valder v. Barnhart, 410 F. Supp. 2d 134, 138 (W.D.N.Y. 2006). "Failure to apply the correct legal standards is grounds for reversal." Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984)

6.     The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 404.1520, 416.920.  The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7.     This five-step process is detailed below:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.  The claimant has the burden of proof as to the first four steps, but the Commissioner has the burden of proof on the fifth and final step.  See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d

582, 584 (2d Cir. 1984).

8.    In this case, the ALJ made the following findings:

(1) Smith has not engaged in substantial gainful activity since his alleged onset date. (R. 17.)[2]

(2) Smith's "diabetes, hip/leg and heart (C[ongestive] H[eart] F[ailure])" constitute severe impairments. (Id.)

(3) He does not have an impairment or combination of impairments that meets or medically equals the criteria necessary for finding a disabling impairment under the regulations. (Id.)

(4) He cannot perform any of his past relevant work (R. 25), but he retains the residual functional capacity (RFC) to perform light work, (R. 19).

(5) Last, "considering the claimant's age, education, and work experience," the ALJ concluded that "a finding of 'not disabled' is suggested by Medical-Vocational Rule 202.21." (R. 25.)

9.    Smith argues that remand is required because the ALJ (1) failed to classify his mental impairments as severe, and (2) failed to account for his obesity.

10.    His first objection consists of two parts. First, Smith maintains that the ALJ failed to develop the record. Second, he argues that the ALJ improperly ignored the opinion of a consulting psychologist, who found that Smith had moderate impairments regarding certain mental abilities. Both of these errors, Smith argues, would affect the ALJ's analysis at Step 2 and result in a finding that he suffers from a severe mental impairment.

---

[2]Citations to the underlying administrative record are designated "R."

4

11.     Smith first argues that the ALJ "failed to obtain or inquire into approximately seven months['] worth of treatment notes that exist." (Pl.'s Br. at 11.)  He argues that the ALJ should have sought medical evidence from a place he can identify only as "NWCMHC."[3] From this premise, Smith goes on to criticize the ALJ's finding that Smith did not return for follow-up mental health treatment. "[N]ot only did the ALJ fail to adequately develop the record," Smith argues, "but the ALJ also was under the mistaken impression that Mr. Smith declined counseling, seriously calling into question the supportability of his decision."  (Pl. Br. at 13.)

12.     It is familiar law that given "the essentially non-adversarial nature of a benefits proceeding," an ALJ is under an affirmative obligation to develop a claimant's medical history "even when the claimant is represented by counsel" when there are deficiencies in the record.  Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996); Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999);  20 C.F.R. § 404.1512 ("Before we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application . . . .").

13.     But as an initial matter, this is the first time that Smith has raised the concern regarding NWCMHC. At the hearing, Smith did not object to the exhibits in the record or inform the ALJ that records were missing; nor did he seek a subpoena for further records. Further, in applying for benefits, the only treating entity or source of medication he identified was Jericho Road Family Practice.  A later submission left this unaltered. Finally, when the ALJ asked what prevented him from working, he did not mention any mental

---

[3]This may refer to an organization under the name Northwest Community Mental Health Center, with various locations in the greater Buffalo, NY region.  Smith, despite having allegedly attended several sessions there, says (through his attorney) that this is "most likely" the case. (Pl.'s Br. at 7 n. 5.)

health issues, and later reported that he just began seeing a psychologist or psychiatrist two months earlier.

14.     But now Smith contends that cryptic, passing references in the Jericho Road treatment notes to a place that even now he can identify only by its initials triggered the ALJ's duty to obtain records from this unidentified place. Smith argues that because there are several references to NWCMHC in the Jericho Road records over the course of seven months, there must be seven months' worth of NWCMHC treatment notes that the ALJ failed to account for. But this stretches the import of the notations in the treatment records beyond reason. All the references in the Jericho Road notes are nearly identical. They read: "Has now been to NWCMHC  – going to counseling, starting meds."  (See, e.g., R. 386.) There are at least four such references, beginning in October of 2010 and ending in April of 2011. The identical, repeated language suggests that, in each subsequent note, Jericho Road simply copied or did not remove the notation from the original October 2010 treatment note. There is no indication, as Smith argues, that he was "continually" receiving treatment. It is just as likely, if not more so, that Smith only went once.

15.     But this Court – like the ALJ – need not rely on guesswork. A Jericho Road treatment note from February of 2011 – near the very end of this span where Smith argues there are seven months of missing treatment notes – removes any doubt. It provides that Smith "went once" to "NWCHc,"[4] and that he told his Jericho Road physician that "they [NWCMHC] never got back w/ me." (R. 391.)

Mystery solved. There are not seven months' worth of crucial treatment notes that somehow appeared only after Smith initiated this action. He "went once."

16.     Most significantly, the ALJ was perfectly aware of this. He specifically pointed

---

[4]The author of the treatment note appears to have used a lowercase "c" and inadvertently omitted the letter "M" from the initialism. The latter error is followed in the ALJ's decision.

out that Smith went to "NWCHC" only once and that the facility, whatever it may be, never got back to him. (R. 23.) Thus, the ALJ was under no "mistaken impression." He was, instead, acutely aware of Smith's medical history and correctly found that he never followed up after his first appointment with NWCMHC.

17.     Thus, although there may be a single  treatment note from Smith's one visit to NWCMHC, the gap that, as Smith argues, calls into question the reliability of the ALJ's conclusion is absent; it is, in fact, entirely artificial. Considering this, and considering that Smith did not identify NWCMHC as a treating source and that even now Smith cannot identify the entity by name, this Court finds the ALJ did not err in his development of the record.

18.     The second aspect of Smith's first contention fares no better. It too relies on a stretched interpretation of the record. Smith argues that the ALJ improperly rejected the findings of consultive examiner Dr. Shepard Goldberg, a psychologist.  Dr. Goldberg found that Smith would have "no limitation maintaining attention and concentration," and a "mild limitation in his ability to maintain a regular schedule, learn a new task, or perform complex tasks." (R. 330.)  He also found that Smith would be "moderately limited in decision-making, relating adequately with others, and [in] his ability to deal with stress." (Id.) He concluded that stress-related problems "may, in some areas, significantly interfere with his ability to function on a daily basis." (Id.) At a more basic level, however, "he would be able to function without limitation." (Id.) Finally, his intellectual limitations were "essentially on the mild side." (Id.)

19.     Smith contends that these results dictate a finding that Smith has a severe mental impairment. Specifically, he notes that if a claimant has a "moderate" impairment in one of the three areas of mental functioning listed in the Social Security Regulations –

"activities of daily living; social functioning; and concentration, persistence, or pace" – then a finding of "severe" is compulsory. <u>See</u> 20 C.F.R. § 404.15209(c)(3). In turn, he argues that Dr. Goldberg found that Smith suffered from such a "moderate limitation," and thus the ALJ should have found his mental impairments to be "severe."

20.     It is true that Dr. Goldberg used the phrase "moderate limitation" when referring to Smith's decision-making, ability to relate adequately with others, and ability to deal with stress, but it does not follow that the ALJ erred in concluding that Smith had only mild limitations in the three Regulation-defined areas. Indeed, the ALJ did not "reject" Dr. Goldberg's findings. Instead, it is clear to this Court that the ALJ considered all the evidence in the aggregate – including the entirety of Dr. Goldberg's report, the report of state-agency psychologist, Dr. Cheryl Butensky, and Smith's own testimony. The ALJ carefully addressed each of the three factors (including the fourth factor – episodes of decomposition – about which there is no dispute there are none). In making his determination that Smith suffered from only mild limitations in each of the three areas, the ALJ spelled out in detail both doctors' reports and Smith's own testimony. For example, the ALJ noted, among other things, that Dr. Goldberg found that Smith had various "mild" limitations, and in some areas "no" limitations; that Dr. Goldberg found Smith could function "without limitation" at a "more basic level"; that Dr. Goldberg summarized Smith's limitations as "essentially mild"; that Dr. Butensky found Smith to have mild limitations in each of the three defined areas; and that Smith's General Assessment of Functioning Score was 66, a score associated with "mild" symptoms. This Court therefore finds no reversible error in the ALJ's determination that Smith suffered from only mild mental limitations. Substantial evidence supports his finding.

21.     Smith's reliance on <u>Oakes v. Astrue</u> does not save his claim. No.

5:06-CV-0332 LEKDEP, 2009 WL 1109759, at *11  (N.D.N.Y. Apr. 23, 2009). There, Magistrate Judge Victor Bianchini (in a Report and Recommendation that was fully adopted) found it error for the ALJ to reject the lone mental-health report in the case, completed by a Dr. Nobel, who found that the claimant had moderate difficulties in "maintaining concentration, persistence or pace." Id. at *7. Judge Bianchini faulted the ALJ for failing to complete "a special technique analysis of his own" while rejecting "Dr. Nobel's moderate finding." Id. But the differences here are many.

First, and arguably most importantly, ALJ Sochaczewsky did complete his own analysis. This was the ALJ's principal error in Oakes. As Judge Bianchini noted, he could not "make a determination as to whether the ALJ was correct in his finding of non-severe, because he failed to complete the special technique." Id.

Second, Dr. Goldberg's report was not the only one on which the ALJ was entitled to rely, as was the case in Oakes.

Third, Dr. Nobel specifically identified and rated Oakes in accordance with the three Regulation-defined elements. By contrast, Dr. Goldberg does not attempt to make specific findings in those three areas , referring instead to things like Smith's "decision-making" and ability to "perform complex tasks." (R. 330.) Notably, Dr. Butensky, who did evaluate Smith in accordance with the three areas, found only mild limitations.

Finally, the severity of the mental symptoms in the record were far greater in Oakes than here. See id., at *6–*7.

This Court therefore finds that the ALJ did not err in finding Smith's mental impairments to be non-severe.

22.    Smith's final argument is that the ALJ failed to account for Smith's weight. But there is nothing in the record, and Smith points to nothing, that would indicate his weight

would, even in combination with other ailments, significantly limit his ability to do basic work activities beyond that which the ALJ found. And this Court must be "[m]indful that a lack of evidence of severe impairment constitutes substantial evidence supporting a denial of benefits." Martin v. Astrue, 337 F. App'x 87, 89 (2d Cir. 2009) (rejecting contention that obesity should have been considered a severe impairment because plaintiff's obesity was mentioned "only four times" and there was "no evidence of a severe impairment limiting work ability").

23.     In any event, there can be no dispute that the ALJ was aware of Smith's weight. Indeed, the ALJ fully considered the impairments that his weight might contribute to or exacerbate, including congestive heart failure, diabetes, and leg pain.  And, so considered, he assigned Smith an RFC that is limited to light work. Remand is therefore not warranted on this ground.

24.     In sum, after undertaking a full review of the record, it becomes clear that the ALJ's findings must be sustained. The evidence does not compel a finding that Smith is disabled and cannot perform the circumscribed work identified by the ALJ.  This Court will therefore grant Defendant's Motion for Judgment on the Pleadings, and deny Plaintiff's motion for the same relief.

****

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 8) is GRANTED.

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 12) is DENIED.

FURTHER, that the Clerk of Court shall close this case.

SO ORDERED.


Dated:   June 2, 2014
      Buffalo, New York


<u>/s/William M. Skretny</u>
WILLIAM M. SKRETNY
Chief Judge
United States District Court